**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1963-24

A.A.,[1]

    Plaintiff-Respondent,

v.

L.A.,

    Defendant-Appellant.

_____

> Argued June 3, 2025 – Decided June 18, 2025
>
> Before Judges Gilson and Augostini.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1770-22.
>
> William Strazza (Law Office of William Strazza, LLC) argued the cause for appellant.
>
> John E. Clancy argued the cause for the respondent (Townsend, Tomaio & Newmark, LLC, attorneys; John E. Clancy, on the brief).

---

[1] We use initials for the parties and children to protect the confidentiality of these proceedings. R. 1:38-3(d)(13).

PER CURIAM

This post-divorce-judgment appeal arises from the parties' disagreement about whether their children should receive the Tdap and Meningococcal vaccines. Defendant L.A. appeals from a Family Part order, following a multiple-day bench trial, granting plaintiff A.A. limited medical decision-making authority to consent to the administration of these two vaccines. We affirm the order because substantial credible evidence in the record to supports the trial court's decision.

I.

We summarize the facts from the record only to the extent necessary to address the issues raised on appeal. The parties were married on May 15, 2010. During their marriage, they had two children: A.V.A., born in 2011, and M.A., born in 2013. After twelve years of marriage, the parties were divorced on June 9, 2022 by way of a Dual Final Judgment of Divorce. Their judgment of divorce incorporated their Marital Settlement Agreement (MSA) and a Custody and Parenting Time Plan.

The parties agreed to share joint legal and physical custody of the children. They negotiated a "true 50/50 joint residential arrangement" with neither parent being designated as the parent of primary residence. The parties also agreed to

consult with each other regarding major decisions, including health decisions for the children. In the event a disagreement arose, the parties agreed to attend mediation. Their MSA did not address vaccinations for the children.

After their divorce, for the most part, the parties co-parented their children cooperatively and acted in their best interests. On the issue of vaccinating their children, during their marriage, the children "received the majority of" their standard recommended vaccinations, to which defendant consented. However, following the divorce, defendant's position changed regarding the most recent standard vaccines—Tdap and Meningococcal.

In May 2023, as A.V.A. was finishing fifth grade and scheduled to enter sixth grade in the fall, the parties were notified by the children's school of the required vaccinations for entry into sixth grade. In July 2023, the parties attended a medical appointment with the children's pediatrician, Dr. Darren Saks, during which they discussed the issue of these vaccines. Defendant objected to A.V.A. being given these vaccines. When the parties were unable to resolve this disagreement over whether these vaccines should be administered to their children, they sought court intervention.

On July 31, 2023, plaintiff filed a motion, seeking permission to administer the Tdap and Meningococcal vaccines to the children, to be granted

3

sole medical decision-making authority, and for an award of counsel fees. Plaintiff also filed an order to show cause with interim restraints, seeking permission to take A.V.A. for the required vaccines before school began. On August 28, 2023, the court denied the order to show cause and converted it to a motion returnable on September 15, 2023. In a separate order, the court appointed Evelyn F. Nissirios, Esq. as guardian ad litem (GAL) to represent the best interests of the children and render a recommendation concerning the vaccination issue. On September 29, 2023, the court ordered a plenary hearing to resolve the parties' dispute regarding this issue.

Around the time plaintiff filed his motion, defendant had begun the process for obtaining a school medical exemption for A.V.A. Defendant contacted Dr. Lisa Bryhn of Affordable Health Inc. and requested a letter in support of a medical exemption for A.V.A. However, the medical exemption was initially denied.

Defendant sent in a second request, which was also denied. Defendant then retained Dr. Stephen M. Smith to assist with securing the exemption for A.V.A. so he could continue attending school. The Bergen County Department of Health (BCDOH) agreed to a temporary extension of the vaccine requirement until October 31, 2023, to permit defendant to provide additional

documentation.  On October 11, 2023, Dr. Bryhn submitted a second exemption letter.  Two days later, on October 13, 2023, A.V.A. was granted a medical exemption for school.

The plenary hearing began on January 5, 2024, and proceeded over multiple days over the course of several months, with the testimony concluding on August 2, 2024.  Plaintiff testified initially and called the GAL and the children's pediatrician, Dr. Saks, as witnesses.  Defendant testified and called her privately retained expert, Dr. Stephen Smith.

As the hearing neared conclusion, the parties realized that they would be confronted shortly with the same issue for their younger child, M.A., who was due to enter sixth grade in September 2024.  On August 20, 2024, defendant filed an emergent application seeking leave to apply for a medical exemption for M.A.

On September 16, 2024, the court authorized defendant, over plaintiff's objection, to pursue a medical exemption from the required vaccines for M.A. The court made clear that the exemption decision before the BCDOH and the school were "distinct" from the decision before the court.  The court concluded it had the authority based on the need for continuity of the child's education under these emergent circumstances to grant defendant this limited authority.

A-1963-24

Moreover, the emotional well-being of the children factored into this decision, because the court did not want to create a sibling discrepancy where one child would be attending school and the other would not. Finally, the court stated that it was not making any finding that the child did not need the vaccines.

Following the close of the hearing, on February 26, 2025, the court issued an order, with an accompanying 154-page written opinion, granting plaintiff's application in part and permitting him "limited medical decision-making authority as it relates to the administration of the subject vaccinations . . . ." The court further "require[d] the parties to utilize a co-parenting professional to help them navigate their ongoing differing perspectives as it relate[d] to the medical care of their children."

The court made detailed credibility findings, beginning with the GAL, who the court found "extremely credible." The GAL conducted a thorough investigation, culminating in her December 1, 2023 report and supplemented by her July report. The GAL considered the concerns of both parties in rendering her recommendations. The GAL consulted with Dr. Michael Russo, a pediatric infectious disease specialist at the Children's Hospital of Philadelphia (CHOP), and requested the Doctor to review the children's records, consider the concerns raised by the parties, and render an independent, third-party expert opinion as to

6

whether the vaccines should be administered.  According to the GAL, Dr. Russo recommended that both children receive the vaccinations and particularly noted that he "wholeheartedly recommends that [M.A.] get[] vaccinated."

The GAL made five specific recommendations and on the ultimate question concluded that "the parties abide by the recommendations of the children's treating pediatrician, [Dr.] Darren Saks . . . with regard to the administration of all future vaccines."  The court found the recommendations of the GAL reasonable and consistent with the children's best interests, "including having the parents continue to share joint legal custody and [] have the parties abide by the recommendations of their [medical] provider."

In terms of the credibility of the parties, the court found defendant partially credible and less credible than plaintiff.  The court noted that defendant's testimony was contradictory to her own beliefs and that of her expert, Dr. Smith.  Defendant's contradictory testimony led the court to question the reasonableness of her testimony.  The court explained that during her testimony, defendant "exclaimed that either child 'could die!' if compelled to receive the vaccine, which [had] not been articulated in any testimony . . . not even in [defendant's expert] Dr. Smith's testimony."

The court also found defendant's testimony regarding the concerns she expressed with the children's gene deficiency, the MTHFR gene, their stomach issues, "plus the lack of absorption of nutrients and heavy metals toxicity[,]" and the effect of "putting vaccines" into their bodies, not supported by the medical professionals, which led the court to find her position not reasonable. The court also did not find defendant's position connecting M.A.'s hearing loss with the measles-mumps-rubella (German measles) vaccines to be reasonable.

The court noted concern with defendant's expert, Dr. Bryhn, who submitted letters in support of the children's school medical exemption. Those concerns included Dr. Bryhn not having met nor examined either child and that her report contained only generalities. The court concluded that defendant's "credibility is impugned by her reliance on Dr. Bryhn's correspondence . . . ." For instance, as the trial court noted, the evidence demonstrated that A.V.A. "had not suffered any known allergic reaction to prior vaccinations." Nonetheless, Dr. Bryhn's made a generalized statement that "due to his various 'medical conditions,' he '[was] at greater risk of an allergic reaction to any vaccines.'" The court found that statement lacked any support in the record.

With respect to the parties' expert witnesses, the court found Dr. Saks credible and that his testimony focused on the interests of his patients. However,

8

the court found Dr. Smith's testimony "lack[ing in] knowledge about these children" and therefore, "his opinion not largely credible . . . ." The court also acknowledged correspondence referred to by the parties and the GAL from Dr. Michael Russo and Dr. Lisa Bryhn.

The court applied the best-interests-of-the-child test in determining whether the children's best interest would be served by modifying "the parties' legal custodial arrangement to award [plaintiff] limited medical authority for the purpose of making vaccination decisions for the children." The court analyzed the factors under N.J.S.A. 9:2-4, giving "great weight" to factor seven, the needs of the children, and factor nine, the quality and continuity of the children's education. The court recognized that defendant "would like the [c]ourt to rely upon the fact that [A.V.A.] has been granted a medical exemption by the [BCDOH], this [c]ourt [did] not find that fact to be dispositive." The court also noted that "this fact [was] not evidential, nor being considered by [the] [c]ourt in rendering [its] opinion."

In granting plaintiff limited medical decision-making authority for these vaccines only, the court noted that "[t]his modification to the [parties'] joint legal custody arrangement applies only to the authority to determine if the children should receive the [Tdap] and Meningococcal vaccines." The court clearly held

9

that "[t]his modification does not change any other custody provisions" in the parties' agreement.

During his testimony, Dr. Smith testified that he was relying on lab reports for M.A. from 2017. According to Dr. Smith, the results showed markers for immunodeficiency, which may be relevant to whether M.A. should be vaccinated. Thus, as it relates to M.A., the court "strongly urged" the parties to speak with the pediatrician and follow-up with any bloodwork the pediatrician "may be able to utilize to determine if [M.A.] has an autoimmune disorder that would require further analysis by an immunologist."

Immediately following the issuance of the court's decision, plaintiff scheduled the children to be vaccinated. On February 26, 2025, defendant filed a motion for a stay with the family court. Although the court denied the motion, it delayed implementation of the order for seven days, allowing defendant to file an emergent application. On March 17, 2025, we granted a stay and accelerated the appeal.

On appeal, defendant contends the family court's best interests analysis was erroneous and warrants reversal. More specifically, defendant alleges two errors by the trial court: (1) not giving adequate deference to the BCDOH's medical exemption; and (2) erring in its credibility assessments of defendant and

defendant's expert, Dr. Smith. Having reviewed the record and governing law, we are satisfied the family court's findings are supported by substantial and credible evidence and are consistent with the governing law.

## II.

Our "review of a trial court's fact-finding function is limited." Cesare v. Cesare, 154 N.J. 394, 411 (1998). The court's factual findings following a plenary hearing are entitled to deference provided those findings are "supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Deference for the trial court's factual and credibility findings is particularly important "[b]ecause a trial court 'hears the case, sees and observes the witnesses, [and] hears them testify . . . .'" Id. at 412 (second alteration in original) (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988)) (internal quotation marks omitted). Therefore, "it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Ibid. (quoting Pascale, 113 N.J. at 33). Accordingly, we will not disturb the trial court's fact findings unless we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant, and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms, 65 N.J. at 484).

11

As to questions of law and a trial court's legal conclusions, we owe no deference. N.J. Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super. 320, 330 (App. Div. 2011). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"A custody arrangement adopted by the trial court, whether based on the parties' agreement or imposed by the court, is subject to modification based on a showing of changed circumstances, with the court determining custody in accordance with the best interests standard of N.J.S.A. 9:2-4." Bisbing v. Bisbing, 230 N.J. 309, 322 (2017). When faced with the responsibility of resolving a dispute between parents concerning their children, the polestar of the court's decision is always the best interests of the children. D.A. v. R.C., 438 N.J. Super. 431, 450 (2014). "This overarching consideration" represents the "paramount judicial responsibility [which is] to consider and safeguard 'the safety, happiness, physical, mental and moral welfare of the child.'" Ibid. (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)).

On appeal, defendant contends that the family court erred in failing "to even acknowledge" the BCDOH's decision to grant both A.V.A. and M.A.

medical exemptions as a component of its credibility analysis and not accord this decision due deference. This argument fails for the following reasons.

Defendant asserts the court erred in not deferring to the BCDOH's "expertise" and argues that the BCDOH reviewed the same letters and reports the family court had reviewed. However, defendant concedes that the BCDOH did not have "any submissions" from either the children's pediatrician, Dr. Saks, or Dr. Russo, whose expertise the trial court relied upon. Further, defendant elected not to call as witnesses during the plenary hearing any representative from the BCDOH. Nor did defendant call Dr. Bryhn, who defendant retained to pursue the exemption and who had submitted letters to the BCDOH in support of the medical exemptions.

Moreover, there was no evidence to suggest that due process was afforded to plaintiff prior to the issuance of A.V.A.'s medical exemption. With respect to the exemption for M.A., the court permitted defendant, over plaintiff's objection, to pursue a medical exemption for M.A. As the GAL testified, the parties and the court understood that the exemption was pursued "to allow for [the] plenary hearing [and] . . . court determination" to be completed and for the children to remain in their school without disruption until that decision by the family court could be made.

A-1963-24

The BCDOH recognized that the family court was the appropriate forum in which to address the parents' conflicting positions and "make a determination as to the best interest of the child." Contrary to defendant's assertion, the trial court did acknowledge the medical exemptions and noted that defendant "would like the [c]ourt to rely upon the fact that [A.V.A.] has been granted a medical exemption . . . ." Nonetheless, the court did not find that fact dispositive nor evidential, and thus, did not consider it in its decision. We conclude the trial court did not err by not considering or deferring to the BCDOH's decision.

Defendant next contends the family court's credibility assessment of both defendant and defendant's expert, Dr. Smith, was contrary to the credible evidence and warrants reversal. First, with respect to Dr. Smith, defendant argues that the family court's credibility assessment was inconsistent because on one hand, the court "urged" the parties to follow Dr. Smith's advice, yet on the other hand, did not credit his opinion on the ultimate issue.

A factfinder is free to "give [the expert's testimony] whatever weight [it] deem[s] [] appropriate," and "accept or reject all or part of an expert's opinion(s)." Model Jury Charges (Civil), 1.13, "Expert Testimony" (approved Apr. 1995); State v. Spann, 236 N.J. Super. 13, 21 (App. Div. 1989). A trial court "need not adopt the opinion of [any] expert in its entirety." Brown v.

14

Brown, 348 N.J. Super. 466, 478 (App. Div. 2002) (citing Carey v. Lovett, 132 N.J. 44, 64 (1993)).

Even though the court was free to accept Dr. Smith's opinion in part, the court did not order the parties to follow Dr. Smith's advice. Instead, the court, consistent with its decision, "strongly urged" the parents to consult with the pediatrician regarding any bloodwork necessary to determine if M.A. has an autoimmune disorder requiring further analysis.

Likewise, in assessing defendant's credibility, the court was free to "believe everything a witness said or only part of it or none of it." Model Jury Charges (Civil), at 1.12, "Credibility" (approved Nov. 1998). The court's credibility findings as to defendant were detailed and well-grounded in the record. We discern no abuse of the court's discretion in those findings and defer to them.

In conclusion, we note that because these divorced parents could not agree on this medical issue affecting their children, the family court appropriately stepped in to resolve the disagreement. Horswell v. Horswell, 297 N.J. Super. 94, 104 (App. Div. 1997). In a comprehensive written decision, the family court summarized the evidence, made detailed credibility findings, and applied the best interests of the child factors as set forth in N.J.S.A. 9:2-4(c). The court then issued a narrow

A-1963-24

modification of legal custody aimed at resolving this limited dispute while maintaining the parents' right to joint legal custody and effectuating a decision in the children's best interests. See Sacharow v. Sacharow, 177 N.J. 62, 80 (2003) (holding that divorced parents who invoke the jurisdiction of the family court assent to the possibility of a curtailment of their rights).

We discern no abuse of discretion in the court's fact-finding conclusions, which are well supported by the sufficient, credible evidence in the record. We are also satisfied the court applied the appropriate legal standard and did not owe deference to the BCDOH's medical exemption decision.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division